IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SIMPLEAIR, INC., § § § | | |
| Plaintiff, § | CIVIL ACTION NO. 2:11-cv-416-JRG | |
| § § | | |
| v. § § | | |
| MICROSOFT CORP., *et al.*, § § | | |
| Defendants. § § § § | | |

**OPINION AND ORDER**

Before the Court is Google Inc.'s ("Google") Motion to Compel Production of Documents Withheld as Privileged (Dkt. No. 334). Google seeks to compel SimpleAir, Inc. ("SimpleAir") to produce four documents listed as entries 205, 206, 207, and 208 ("Withheld Documents") in SimpleAir's privilege log.[1] Each of the Withheld Documents is correspondence involving AirMedia, Inc. ("AirMedia"), the predecessor-in-interest to SimpleAir, dated between 1998 and 1999.

**I.     ATTORNEY-CLIENT PRIVILEGE**

"The oldest of the privileges for confidential communications, the attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." *Hodges, Grant & Kaufmann, v. U.S. Gov't, Dept. of the Treasury, I.R.S.*, 766 F.2d 719, 720 (5th Cir. 1985). "The purpose of the privilege is to encourage clients to make full disclosure to their attorneys." *Fisher v. U.S.*, 425 U.S. 391, 403 (1976). "The burden of

---

[1] Google withdrew its request as to the fifth document, Entry 252, during oral argument on August 21, 2013.

1

demonstrating the applicability of the privilege rests on the party who invokes it." *Hodges*, 677 F.2d at 721. The application of the attorney-client privilege is a question of fact, to be determined in light of the purpose of the privilege and guided by judicial precedents. *Id.* The clearly erroneous standard applies to appellate review of a district court's factual findings regarding the application of the attorney-client privilege. *In re Avantel, S.A.*, 343 F.3d 311,318 (5th Cir. 2003).

The Court heard arguments from counsel during a hearing held on this motion on August 21, 2013, [2] at which time counsel for SimpleAir submitted the Withheld Documents to the Court for *in camera* inspection. After the hearing, the Court conducted an *in camera* review of the Withheld Documents. Based on the briefing, argument, and its own *in camera* review, the Court finds that SimpleAir's assertion of attorney-client privilege over the Withheld Documents, at the time they were created, is meritorious. The Court further specifically finds the privilege was created by the inherent nature of these written communications at the time they were generated. Having established such documents as privileged communications at the time they originated, the Court next turns to the parties' dispute over whether the privilege enjoyed by AirMedia transfers and survives through the resulting chain of title to the ultimate purchaser of U.S. Patent Nos. 6,021,433 and 7,035,914 ("the Asserted Patents"), the plaintiff in this case.

## II. FACTUAL BACKGROUND

The facts surrounding the chain of title to the Asserted Patents are essentially undisputed. AirMedia owned the Asserted Patents and was practicing some of the embodiments as part of its AirMedia Live information service until shortly before it filed bankruptcy in 1999. During the bankruptcy proceedings, Wireless Internet, Inc. ("WI") acquired all of AirMedia's assets as part of

---

[2] The Court notes that during the August 21, 2013 hearing, Google did not seriously dispute the original existence and attachment of privilege to the four documents at issue in this motion, instead choosing to focus on arguing that the privilege did not survive to be succeeded to by SimpleAir.

2

the bankruptcy Trustee's liquidation process. WI was formed by several former shareholders and directors of AirMedia for the specific purpose of purchasing AirMedia's assets from the bankruptcy trustee. WI financed the purchase of AirMedia's intellectual property through a secured loan made by Verus International Group, Limited ("Verus"). WI did not practice the Asserted Patents and it too later filed bankruptcy in 2001. In 2002, Verus obtained relief from the automatic stay in WI's bankruptcy and proceeded to foreclose its security interest in the collateral securing its loan. Verus "bid in" such assets by (taking a credit against its debt) and as a result, purchased all of the assets related to the original AirMedia Live services, including the Asserted Patents.

Two years later in 2004, SimpleAir was formed by John Payne and Tim von Kaenel, who are two of the named inventors of the Asserted Patents. SimpleAir acquired the vast majority of the original AirMedia assets through a purchase from Verus. This purchase included the two Asserted Patents and twenty-five pending patent applications. The remaining minority of the assets, which included one pending patent application and a set of trademarks and domain names, was purchased by David S. Rose, who was the former CEO of AirMedia. SimpleAir is presently engaged in the patent enforcement business. It does not practice the Asserted Patents in the same way as AirMedia did prior to its bankruptcy in 1999.

### III. ANALYSIS

Both sides rely heavily on *Soverain Software LLC v. Gap, Inc., et al.*, 340 F. Supp. 2d 760 (E.D. Tex. 2004) to support their opposing positions on whether this transfer of assets preserves the privilege claim to the Withheld Documents with respect to SimpleAir. The Court finds that while *Soverain* is instructive, it provides no bright-line rule for general application. Instead, this

Court concludes that whether a transfer of assets preserves a claim of privilege is a question of fact that should be answered based upon the totality of the circumstances and examined on a case-by-case basis. The Court in *Soverain* took this very approach. This Court now undertakes the same approach in the present case.

In its motion, Google relies on *Soverain* for the proposition that a transfer of merely "some assets or a single patent from one corporation to the other does not transfer the attorney-client privilege." 340 F. Supp. 2d at 763. Google portrays the current facts in a light most favorable to its own reading of *Soverain*, and in doing so, characterizes this case as a series of transactions where the pool of AirMedia assets is divided in a disjointed fashion. Google underscores its argument by emphasizing the transformation of AirMedia's business from the original communication service and software development business into something entirely different. In contrast, SimpleAir describes its version of these acquisitions to be of substantially all assets of the entire "AirMedia business," which has endured change but is essentially on-going. At the end of the day, the Court is persuaded that, as in many situations, the truth lies somewhere in between the competing versions offered by the parties. The Court must now determine whether such facts constitute "a mere transfer of some assets," or something more. Clearly, a "mere transfer of some assets" does not also transfer the privilege.[3]

The court in *Soverain* recognized real and practical concerns of applying the "mere transfer" standard to the myriad of ways in which control of an enterprise can effectively change hands. There, the court found that better guidance flows from the practical consequences in each

---

[3] *Zenith Elecs. Corp. v. WH–TV Broadcasting Corp.,* 2003 WL 21911066, *1–2 (N.D.Ill.2003); *In re Grand Jury Subpoenas,* 734 F.Supp. 1207, 1211 n. 3 (E.D.Va.1990); *Telectronics Proprietary Ltd. v. Medtronic, Inc.,* 836 F.2d 1332, 1336–37 (Fed.Cir.1988) (patent); *In re Yarn Processing Patent Validity Litig.,* 530 F.2d 83, 90 (5th Cir.1976) (patent).

case rather than the legal formalities of the particular transaction. 340 F. Supp. 2d at 763 (citing *Tekni–Plex, Inc. v. Meyner and Landis,* 89 N.Y.2d 123 (1996) and *Ramada Franchise System, Inc. v. Hotel of Gainesville Associates, Inc.,* 988 F.Supp. 1460, 1464 (N.D.Ga.1997)). "If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well." *Id.*

Here, AirMedia's original business of software and communications systems development was unsuccessful and in 1999, the company went bankrupt. AirMedia's resulting assets appear to have been divided only once along the subsequent chain of title, when Verus sold the two Asserted Patents and twenty-five pending patent applications to SimpleAir and separately sold one pending patent application and a set of trademarks and domain names to David Rose. During oral argument, counsel for Google represented that David Rose paid $15,000 for his share of the AirMedia assets in a cash sale. Upon inquiry by the Court, counsel for SimpleAir stated that instead of a cash sale, Verus agreed to receive a structured percentage of future monies recovered by SimpleAir through patent enforcement. Counsel for SimpleAir estimated that, to date, Verus has received several "tens of millions" of dollars from SimpleAir by means of their purchase agreement. (08/21/2013 Hearing Tr. at 51:3-4.) This stark and overwhelming numerical difference is significant. Not only is SimpleAir the present successor-in-interest and owner of substantially all of AirMedia's original patent portfolio, the now established value of SimpleAir's portion of AirMedia's assets dwarfs the portion acquired by David Rose.

Additionally, SimpleAir was formed by two of the named inventors on the Asserted Patents—John Payne and Tim von Kaenel. It is notable that John Payne was the President and

CEO of AirMedia between 1994 and 1999, and is currently the President of SimpleAir. Tim von Kaenel was an employee at AirMedia in 1998 and is now an employee of SimpleAir. Plainly, there is a significant degree of continuity in the areas of corporate knowledge, management, and experience between AirMedia and SimpleAir. Likewise, John Payne and Tim von Kaenel's interest in preserving their privilege claims on behalf of SimpleAir is unchanged from their former interest in such privilege as representatives of AirMedia. The Court finds that these realities weigh against Google's assertion that SimpleAir's acquisition is nothing more than "a mere transfer of some assets."

The Court next considers whether SimpleAir's patent enforcement practice (as opposed to continuing AirMedia's original business) is alone sufficient to prevent survival of the asserted privilege given the other circumstances in this case. AirMedia was in the business of software and communications systems development before it sought bankruptcy relief in 1999. The key assets of a software business include its employees, sellable products, book of customers, trademark names, and patent portfolio. However, the goodwill attributed to a company's trademarks, products, and the viability of its book of business necessarily diminishes when confronted with the realities of bankruptcy.

As a result, the pool of interested purchasers at a bankruptcy liquidation sale ordinarily do not want to continue practicing a failed business model. Instead, the value is in the assets sold; particularly when those assets can be used in a new way that is not tainted by past business failures. This Court believes that bankruptcy liquidation sales in general could be severely hindered if potential buyers are forced to choose between continuing the failed model of the bankrupt business or forfeiting claims of vital privileges such as those at issue here. Such a Hobson's choice, if forced

upon prospective purchasers of intellectual property (where attorney-client communications are often significant), might effectively leave future bankruptcy liquidation sales in shambles. *See, Soverain*, 340 F. Supp. 2d at 764 ("The Court is reluctant to adopt a principle that unnecessarily inhibits the effective administration of bankruptcy estates."). Therefore, despite Google's emphasis on the disparate business models between the "then" and "now" owners of the Asserted Patents, the Court does not find that difference alone to constitute an outright forfeiture of the privilege.

In sum, the Court finds that control of a business cannot be divorced from ownership of substantially all of the business assets, even if the nature of such business changes direction over time. Control follows ownership and not the other way around. The Court is not persuaded that the transfer of the Asserted Patents from Airmedia to WI, from WI to Verus, and from Verus to SimpleAir, when evaluated in light of the totality of the circumstances, amounted to only a mere transfer of some assets through which the privilege failed to survive. Accordingly, this Court concludes that AirMedia's attorney-client privilege as relates to the Withheld Documents has survived the transfers discussed above and is now properly vested in SimpleAir.

## IV.  CONCLUSION

For the reasons set forth, Google's Motion to Compel Production of Documents Withheld as Privileged (Dkt. No. 334) is hereby **DENIED**.

**So ORDERED and SIGNED this 26th day of August, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE