**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| SIMPLEAIR, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CASE NO. 2:11-CV-416-JRG |
| | § | |
| GOOGLE INC. | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

I.      **Introduction.**

Plaintiff SimpleAir, Inc. ("SimpleAir") filed this patent infringement action against Google on September 15, 2011. At trial, SimpleAir alleged that the operation of Google's Cloud Messenger (GCM) and Cloud to Device Messenger (C2DM) (collectively the "Accused Services") infringe independent claim 1, and dependent claims 2, 3, 7, and 22 (the "asserted claims") of U.S. Patent No. 7,035,914 (the "'914 Patent"). A jury trial commenced on January 13, 2014. On January 18, 2014, the jury reached and returned its unanimous verdict, finding that the Accused Services infringed each of the asserted claims, and that the asserted claims were not invalid. Dkt. No. 601.

However, the same jury was unable to reach a unanimous verdict with respect to the amount of damages. Accordingly, the Court entered judgment with respect to the separate issues of validity and infringement, and ordered a new trial on damages to be set for March 17, 2014. Dkt. No. 634; 635. A new jury was seated and a trial concerning damages only began on March 17, 2014. On March 19, 2014, that jury returned a unanimous verdict awarding $85 million in damages to SimpleAir. Dkt. No. 718.

In the motion presently before the Court, Google seeks to overturn the jury's damages verdict, arguing that SimpleAir failed to offer sufficient evidence to support the jury's award of $85 million, and more specifically, that SimpleAir's expert witnesses provided unreliable testimony, which should have been excluded or stricken under Federal Rule of Evidence 702. *See* Google's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 748).

Having considered the arguments of the parties, and for the reasons stated below, Google's motion is **DENIED**.

## II.     Applicable law regarding Rule 50.

Judgment as a matter of law (JMOL) is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."   Fed. R. Civ. P. 50(a).   "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie."   *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).   The Fifth Circuit applies an "especially deferential" standard in reviewing a jury verdict.   *Brown v. Bryan County*., 219 F.3d 450, 456 (5th Cir. 2000).

In deciding a motion under Rule 50, the Court reviews all evidence in the record and must draw all reasonable inferences in favor of the nonmoving party; moreover, the Court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury.   *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000).   "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'"   *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d

1255, 1261 (Fed. Cir. 2103) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

## III.   Applicable law regarding damages.

Upon a showing of infringement, a patentee is entitled to an award of damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  However, "[t]he burden of proving damages falls on the patentee."  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

There are two alternative categories of damages typically recovered in a patent case: the patentee's lost profits; or the "reasonable royalty [the patentee] would have received through arms-length bargaining."  *Id.*  In this case, Plaintiff sought to recover only the second category of damages, a reasonable royalty.

To determine an appropriate reasonable royalty, patentees (and courts) commonly employ the hypothetical negotiation, or "willing licensor-willing licensee" model.  *Id.* at 1324-25.  The hypothetical negotiation "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began," assuming that the patent is valid, enforceable, and infringed.  *Id.*; *see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 n.13 (Fed. Cir. 1995) (*en banc*).  Such a reasonable royalty analysis "necessarily involves an element of approximation and uncertainty." *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995).  However, the Court must ensure that a jury's damages award is supported by substantial evidence.  *Id.*

3

IV.    **Substantial evidence supports the jury's verdict.**

During trial, SimpleAir presented two explicit damages theories to the jury through the testimony of its expert, Mr. Robert Mills.   The first theory (hereafter the "settlement analysis") was based on SimpleAir's past settlement agreements, with particular emphasis given to the license agreements with Microsoft and Apple.   The second theory (hereafter the "*Georgia-Pacific* analysis") applies the factors enumerated in *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), in order to construct a hypothetical negotiation and corresponding reasonable royalty.

Having reviewed the parties' briefing and the entire record, the Court is persuaded that SimpleAir introduced substantial evidence under both the settlement and *Georgia-Pacific* analyses—evidence that is more than adequate to support the jury's verdict.

**A.  Plaintiff's settlement analysis and its reliance on the Microsoft license support the jury's verdict.**

Applying his settlement analysis, Mr. Mills told the jury that Google should pay a royalty of nearly $127[1] million in compensation for its infringement of the '914 Patent.   *See* Dkt. No. 712, at 14:5-8.   To arrive at that figure, Mr. Mills:

- took the $5 million he calculated as Microsoft's payment for use of the technology claimed in the '914 patent;

- multiplied it by a factor of 40 (to account for the fact that the accused Google messaging services receive significantly more messages that the licensed Microsoft services); and

---

[1] As discussed in more detail below, Mr. Mills performed an alternative reasonable royalty calculation using the *Georgia-Pacific* framework.   Applying that analysis, he opined that the appropriate reasonable royalty would be $146 million.   Hereafter the $127 million figure is used in connection with Google's challenge to the settlement analysis, and the $146 million figure is used in connection with Google's challenge to the *Georgia-Pacific* analysis.

4

- applied certain other adjustment to arrive at a reasonable royalty of $127 Million.   Dkt. No. 712 at 11:4-14:8; Dkt No. 714 at 7:1-12.

At trial, Google disputed the comparability of the Microsoft license, and presented competing testimony from its expert that analyzed SimpleAir's licenses with Yahoo! and Facebook.   Dkt. No. 717 at 22:17-25:5.   In fact, both parties' experts and attorneys went back and forth during the trial with respect to which "neighborhood" of licenses Google belonged to. *See, e.g.,* Dkt. No. 717 at 37:17-47:19.   After hearing both parties' arguments, and carefully deliberating, the jury awarded SimpleAir $85 million in damages—essentially coming out somewhere between the parties' competing "neighborhoods."

Google now asks the Court to Grant its motion for JMOL, arguing that Mr. Mills' reliance on the Microsoft license was improper as a matter of law, because he used it (and the Apple license, discussed below) to "inflate" his reasonable royalty analysis, while ignoring other licenses that Google claims are "comparable."   Dkt No. 748 at 9-11.   Google cites two cases in support of its argument: *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872-73 (Fed. Cir. 2010), and *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 80-81 (Fed. Cir. 2012).   In addition to this general attack on Mr. Mills' reliance on the Microsoft license, Google also argues that SimpleAir's damages model attempts to recover for foreign infringement and/or is insufficiently tied to specific instances of Google's infringement in the United States.   For the reasons stated below, the Court is not persuaded by Google's arguments.

### 1.   Google relies on inapposite case law.

As stated above, Google's motion relies on *ResQNet* and *LaserDynamics*.   However, neither of these cases square with the facts and circumstances at issue here.   In *ResQNet*, the Federal Circuit concluded that the plaintiff's damages expert impermissibly "inflated" his

damages calculations by considering licenses that had no connection to the claimed invention. 594 F.3d at 870, 871 ("Notably, none of these licenses even mentioned the patents in suit or showed any other discernible link to the claimed technology").   Likewise in *LaserDynamics*, the Federal Circuit rejected the plaintiff's damages calculation because its expert relied on patent licensing programs that did not involve the patent in suit, while ignoring the "many licenses expressly for the [patent in suit]."   694 F.3d. at 80.

Mr. Mills' analysis is fundamentally different from those which the Federal Circuit rejected in *ResQNet* and *LaserDynamics*.   For instance, this is simply not a case where "none of these licenses even mentioned the patents in suit."   *ResQNet*, 594 F.3d at 870, 871.   To the contrary, it is undisputed that all of the licenses considered by the Mr. Mills—including the Microsoft license—expressly cover the '914 patent.   *See* Dkt. No. 717 at 17:1-13 (Google's expert, Dr. Ugone, summarizing the license agreements covering the '914 patent[2]).

In this case, Mr. Mills analyzed the universe of potentially relevant licenses, and distinguished the settlement agreements he relied upon (those with providers of infringing notification services (including Microsoft)) from those agreements he determined to be irrelevant to the hypothetical negotiation between SimpleAir and Google (those with "content providers" (e.g., Yahoo! and Facebook)).   *See* Dkt. No. 712 at 2:15-14:8; Dkt. No. 714 at 5:2-14.   Google disagreed, and its expert and attorneys urged the jury to place Google within a different "neighborhood" of licenses.   Dkt. No. 717 at 22:17-33:15.   However, even Google's damages expert admitted that the relevant Apple and Microsoft services were similar in certain crucial respects to Google's infringing messaging services.   *See* Dkt. No. 717 at 44:18-47:19.

---

[2]In fact, only Dr. Ugone considered agreements that did not involve the '914 patent.   Dkt. No. 717 at 59:20-61:13.

Having reviewed then entire record, the Court is persuaded that Mr. Mills' testimony was adequate to "tie proof of damages to the claimed invention's footprint in the market place" and support the jury's verdict.   *ResQNet.com*, 594 F.3d at 869.   Contrary to Google's assertions, the fact that the jury's award came out closer to Plaintiff's proposed "neighborhood" than to the Defendant's does not invalidate the verdict.   Confronted with the parties' contradictory expert testimony, "the jury was free to 'make credibility determinations and believe the witness it considers more trustworthy.'"   *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1362 (Fed. Cir. 2012) (citing *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000)); *see also VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1331 (Fed. Cir. 2014) (citing *i4i*, 598 F.3d at 856). Further, "[t]he jury was entitled to choose a damages award within the amounts advocated by the opposing parties."   *Powell*, 663 F.3d at 1241 (internal citation omitted).   The jury performed its duty, and rendered a verdict that is supported by substantial evidence.

## 2. SimpleAir's damages model does not attempt to recover for foreign infringement.

Google further attacks Mr. Mills' testimony by complaining about his use of worldwide figures for Google and Microsoft's respective use of messaging services.   Google argues that SimpleAir is attempting to exact damages for foreign infringement of the '914 Patent.   Dkt. No. 748 at 5-9 (citing *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348 (Fed. Cir. 2013)).   The Court disagrees.

SimpleAir responds that Mr. Mills did not have U.S. only figures for the number of notifications sent by Google and Microsoft's infringing services—either because.   Dkt. No. 712 at 9:11-10:7; Dkt. No. 714 at 9:13-17.   Mr. Mills' (unrebutted) position is that Google's U.S. only figures either do not exist or Google did not produce them.   *Id.*   Accordingly, he used the global

7

numbers in order to make an "apples-to-apples" comparison of the two companies' respective use of the infringing services.   Dkt. No. 756 at 10.   Further, Mr. Mills used this comparative worldwide use to estimate comparative domestic use between an infringer (Google) and a licensee (Microsoft).

Google's attack on Mr. Mills' testimony is based on a faulty premise: that an infringer's use cannot be reliably compared to a licensee's use unless the plaintiff obtains precise figures for each entity's use of the claimed technology solely within the United States.   Such is not the case.   "A reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (citing Unisplay, 69 F.3d at 517.).   Moreover, an expert may properly estimate the extent of infringing use in the United States where, as here, the actual data is unavailable.   *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 855-56 (Fed. Cir. 2010).

In today's global marketplace, the ability to obtain domestic-only data is an increasing rarity. Although Google purported to identify the components of the infringing messaging system that are used to process and deliver messages, in many instances the location of one or more component is simply listed as "unknown."   *See* Defendant's Exhibit ("DX") 40.   Such gaps in the data make it impossible to establish Google's precise domestic use.   *Id.*   Accordingly, SimpleAir's expert, Mr. Mills, turned to the information regarding Google and Microsoft's global use of the infringing messaging services, in order to estimate domestic infringement.

This is fundamentally distinguishable from the damages model that the Federal Circuit rejected in *Power Integrations.*   711 F.3d. 1348.   In that case, the plaintiff sought damages for worldwide sales on the theory "it was foreseeable that [the defendants'] infringement in the United States would cause [the plaintiff] to lose sales in foreign markets."   *Id.* at 1371.   The Federal

Circuit rejected that argument, holding that the plaintiff could not recover damages for "injury caused by infringing activity that occurred outside the territory of the United States."  *Id.*   Here, SimpleAir is not attempting to recover for extra-territorial infringement, but merely to use Google and Microsoft's global figures as a benchmark from which to estimate those companies' comparative use in the United States.   The Federal Circuit has long recognized that such estimation is permissible (and in some cases required).  *See i4i*, 598 F.3d at 855-56 (damages expert used a survey to "estimate the amount of infringing use"); *Lucent*, 580 F.3d at 1325 (Fed. Cir. 2009); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014) ("This court has also recognized that estimating a 'reasonable royalty' is not an exact science.").   *Power Integrations* is therefore inapposite, and Google's attack on Mr. Mills' testimony should not succeed.

### 3.  Mr. Mills' damages model is sufficiently tied to Google's infringement within the United States.

Google further complains about Mr. Mills' reliance on global figures as unreliable.  *See e.g.*, Dkt. No. 758 at 3.   However, both parties' experts testified that worldwide figures can be used to estimate two companies' comparative infringement within the United States.   Dkt. No. 712 at 9:20-10:7; Dkt. No. 717 at 56:19-57:2.   Specifically, Google's expert, Dr. Ugone, admitted the following:

> Q. Well, when you calculated [the] extent of use for Facebook and did an adjustment for Google, you did it based upon worldwide notifications, right?
>
> A. The -- the data we had for the percent that was Facebook, yes, I will agree with that.
>
> Q: And you believe it's useful and reliable to use worldwide notifications to make an adjustment for extent of use, right?
>
> A: Within the framework that I'm using, yes.

Dkt. No. 717 at 57:5-9.

Mr. Mills, used the same "useful and reliable" tools to compare Google and Microsoft's global use of the infringing messaging services, and from those figures, he developed an estimate of the companies' comparative domestic infringement.   He then specifically informed the jury that he was using such worldwide numbers, and explained why and how he was using the same to estimate infringement within the United States.   Dkt. No. 711 at 56:1-15; Dkt. No. 712 at 9:3-10:10.   It is significant that Google offered no evidence showing that the global figures Mr. Mills relied upon were unreasonable or inconsistent with the companies' comparative domestic infringement.

Having considered the consensus of both experts that global figures are generally "useful and reliable," and in the absence of any rebuttal from Google showing that Mr. Mills' methodology was improperly applied to the specific comparison between Google and Microsoft, the Court is persuaded that Google's post-verdict attack on SimpleAir's Microsoft license theory misses the mark.   Fundamentally, Google's arguments are nothing more than an attack on the weight of the evidence.   As such, Google's effort is materially flawed because the Court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence.   *Reeves*, 530 U.S. at 150-51 (2000).

### 4. Google's use of selective and fragmented quotations from the record further undermines its argument and weakens its credibility before the Court.

Google quotes the following colloquy from the cross examination of Mr. Mills in support of its argument that "Mr. Mills expressly disregarded comparable licensing agreements for the '914 Patent":

> Q: And even though the first Georgia-Pacific factor says to look at the license agreements, you rely on only one agreement in calculating your royalty?

> A. Well, if [by] rely upon you mean I've only been able to adjust one of those agreements to reflect the value for Google, then that's correct.

Dkt. No. 748 at 9 (citing Dkt. No. 714 at 5:5-11).   However, Google's quotation omits the final sentence in Mr. Mills' answer; the complete exchange reads:

> Q: And even though the first Georgia-Pacific factor says to look at the license agreements, you rely on only one agreement in calculating your royalty?

> A: Well, if [by] rely upon you mean I've only been able to adjust one of those agreements to reflect the value for Google, then that's correct. **But I have considered all of those agreements in my analysis**.

Dkt. No. 714 at 5:10-11 (emphasis added to indicate omitted testimony).

Google's statement that "Mr. Mills expressly disregarded comparable licensing agreements," combined with the selectively edited quotation, inaccurately communicates that Mr. Mills omitted the other license agreements from his analysis.   This is clearly not the case.   The Court does not assume this to be an intentional effort to mislead; nevertheless, it is a serious error that bears correcting.   It is certainly one that should have been caught by Google's counsel prior to filing their motion.   Errors of this particular nature, even if unintentional, unavoidably lessen the overall credibility of the offending advocate before the Court.   For future guidance to both of the parties and their lawyers: *incomplete quotations should be used with the utmost care, or better yet, not used at all*.

## B. The Apple license likewise supports SimpleAir's settlement analysis and the jury's verdict.

Mr. Mills also relied on SimpleAir's agreement with Apple to support his settlement analysis.   *See* Plaintiff's Exhibit ("PX") 181 (the Apple license).   Much of this testimony related to the parties' dispute about the appropriate "neighborhood" of licenses that the jury should have considered in order to determine a reasonable royalty for Google's infringement.   *See, e.g.,* Dkt.

No. 712 at 3:20-8:4; Dkt No. 714 at 37:17-47:19, 56:19-59:19.   For the same reasons discussed above, the Court is not persuaded that SimpleAir selected the Apple license simply in order to "inflate" its damages calculations.   To the contrary, both parties' experts presented their opinions as to which agreements would have been germane to the hypothetical negotiation between the parties.   Confronted with such competing testimony, the jury was free to consider the credibility of the witnesses, weigh the competing evidence, determine who had persuaded them, and then award damages accordingly.   *Powell*, 663 F.3d at 1241; *Kinetic Concepts,* 688 F.3d at 1362; *VirnetX*, 767 F.3d at 1331.

### C.  Mr. Mills' *Georgia-Pacific* analysis supports the jury's verdict.

Mr. Mills' second damages analysis was based on the analytical framework set out in *Georgia-Pacific Corp. v. United Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970) 318 F. Supp. 1116.   That case sets out fifteen non-exclusive and largely overlapping factors that frame the reasonable royalty inquiry.   *See LaserDynamics*, 694 F.3d at 60, n.2.   During trial, Mr. Mills walked the jury through his application of the *Georgia-Pacific* framework, and concluded that a hypothetical negotiation based on said framework would have resulted in Google paying a lump sum royalty of $146 million.[3]   Dkt. No. 711 at 141:24-165:8.   Dr. Ugone performed a competing *Georgia-Pacific* analysis, and testified that the resulting royalty would not exceed $6 million. Dkt. No. 717 at 2:18-3:1.   The jury ultimately awarded $85 million in damages.   Dkt. No. 718.

Google first attacks the jury's damages award of $85 million as "so outrageously high . . . as to be unsupportable as an estimation of a reasonable royalty."   Dkt. No. 748 at 5 (citing *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1241 (Fed. Cir. 2011)).   Google further argues that Mr.

---

[3]As discussed above, Mr. Mills testified that a reasonable royalty would be $146 million under the *Georgia-Pacific* analysis.   He calculated a lower royalty ($127 million) when applying the settlement analysis.   The jury's award of $85 million is well below either of these figures.

Mills' analysis fails in four additional respects: (1) it is unrelated to Google's actual infringement; (2) it is not based on the smallest saleable unit; (3) it fails to account for non-infringing alternatives; and, (4) it fails to show how the *Georgia-Pacific* factors impact the hypothetical negotiation.   Each of Google's arguments lacks merit.

### 1.   The jury's award lies within the range of damages encompassed by the record as a whole.

At trial, each party presented its reasonable royalty calculation to the jury.   Mr. Mills testified that the appropriate royalty would be $146 million; Dr. Ugone testified that the appropriate royalty would not exceed $6 million.   Dkt. No. 711 at 141:24-165:8 (Mills); Dkt. No. 717 at 2:18-33:14 (Ugone).   Ultimately, the jury awarded SimpleAir a lump-sum reasonable royalty that was well within the competing amounts advocated by the opposing parties—as it was entitled to do.   *See Powell*, 663 F.3d at 1241 (internal citations omitted).   Contrary to Google's arguments, the award is not "so outrageously high . . . as to be unsupportable as an estimation of a reasonable royalty."   *Rite-Hite*, 56 F.3d at 1554.   Rather, it is clearly "within the range encompassed by the record as a whole."   *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995).

### 2.   SimpleAir's royalty base rests on actual use of the patented method.

Google's further attacks Mr. Mills' *Georgia-Pacific* analysis, alleging that it "calculates damages based on the basis that each [Android] device is '***capable***' of infringing the '914 patent." Dkt. No. 748 at 13 (emphasis in original).   According to Google, Mr. Mills' calculation therefore "fails to provide a 'legally sufficient basis' for the [jury's] damages award."   Dkt. No. 748 at 13 (citing *i4i*, 598 F.3d at 841; *Powell*, 663 F.3d at 1241; and *Cardiac Pacemakers*, 576 F.3d a5 1359-59).

13

This argument is wrong on the facts, and it misunderstands the law.  With respect to the former, Google relies upon what the entire record shows to be brief, out-of-context statements from Mr. Mills' testimony to support its arguments.  Specifically, Google cites Mr. Mills' testimony that: "the base is U.S. sales of Android smartphones that are capable of using the service."  Dkt. No. 711 at 161:4-5.  However, Google ignores the fact that Mr. Mills previously limited his damages calculations to add no value for users who do not use the infringing system.  *See* Dkt. No. 711 at 85:18-106:11; 134:15-135:25; 152:3-153:8.  Mr. Mills explained his process in testimony that immediately follows the very excerpts Google upon which relies.

> Q. And why did you consider all of the phones, even though some people don't really care about notifications or use the service?
>
> A. Because if you recall a few moments ago, I applied that to get an average revenue per phone and an average profit for phone. So this analysis already has built into it the understanding that some people either don't value notifications or don't value them enough to be willing to pay that much for them.
>
> Q. So when you decided to use the 193 million phones, you considered the fact that notifications aren't important to some people at all?
>
> A. Yes.

Dkt. No. 711 at 162:9-25.

Further, Google misunderstands the law by arguing that the damages analysis must be directly tied to the specific instances of actual infringing use.  It is true that SimpleAir "can only receive infringement damages on those devices that actually performed the patented method during the relevant infringement period."  *Cardiac Pacemakers*, 576 F.3d at 1359.  However, the Federal Circuit has also unequivocally stated that the quantum of that infringement may be established using: "[u]sage (or similar) data [that] may provide information that the parties would

frequently have *estimated* during the negotiation." *Lucent*, 580 F.3d at 1334 (emphasis added).

The Federal Circuit further clarified that:

> Such data might, depending on the case, come from sales projections based on past sales, consumer surveys, focus group testing, and other sources. Even though parties to a license negotiation will usually not have precise data about future usage, they often have rough estimates as to the expected frequency of use.

and:

> On the other hand*, we have never laid down any rigid requirement that damages in all circumstances be limited to specific instances of infringement proven with direct evidence.* Such a strict requirement could create a hypothetical negotiation far-removed from what parties regularly do during real-world licensing negotiations. As shown by the evidence in this case, companies in the high-tech computer industry often strike licensing deals in which the amount paid for a particular technology is not necessarily limited to the number of times a patented feature is used by a consumer. A company licensing a patented method often has strong reasons not to tie the royalty amount strictly to usage. The administrative cost of monitoring usage can be prohibitively expensive.

*Lucent*, 580 F.3d at 1334 (emphasis added).

In other words, while damages may only be awarded for actual infringement of the patented method, the *hypothetical* negotiation and the resulting royalty may be informed by estimates of the quantum of that actual infringement. *Id.* As the Federal Circuit has observed, parties in the real world—and especially in high-tech industries—frequently assign a royalty rate to every unit of a device sold, despite the fact that consumers may not use the patented feature in every instance. *Id.* In this case, Mr. Mills reduced his royalty calculations to account for the amount of actual infringement, *see* Dkt. No. at 85:18-106:11; 134:15-135:25; 152:3-153:8, and then assigned that rate to the universe of potentially infringing products. *Id.* at 161:4-162:25. Not only is this procedure permissible under *Lucent*, it mirrors the real-world negotiations recognized by the Federal Circuit. *Id.*

### 3.   Google's entire market value rule arguments are inapposite.

The entire market value rule applies when a plaintiff seeks to apply a certain royalty rate to the total revenue generated by an infringing product, despite the fact that the patent-in-suit covers only certain elements or components of that product.   *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (the entire market value rule must be satisfied when "applying a royalty percentage to a total sales figure of the infringing software products").   In such cases, the plaintiff can seek damages based on total revenue only if "it can be shown that the patented feature drives the demand for an entire multi-component product." *LaserDynamics*, 694 F.3d at 67.   Otherwise, the plaintiff may seek damages based only on the revenue of the smallest saleable patent-practicing unit.

However, the entire market value rule argument applies only where the expert seeks to apply a royalty percentage (*e.g.*, 5%) to the revenues generated by an entire product (*e.g.*, the Android smartphones or the "hypothetical app" that Google's counsel creates as a framework for describing Mr. Mills' theory).   This is not what SimpleAir's experts (Mr. Mills and Dr. Srinivasan) did.   To the contrary, SimpleAir's experts conducted a detailed analysis of the incremental value Google generates through the use of the method claimed in the '914 patent to enable notification for all apps on Android devices.   Dr. Srinivasan relied on the price of smartphones (the product that is charged for) as one of the factors he used to determine the incremental value of the said infringing notification service (a product that is not charged for).   Mr. Mills then used the incremental value of the claimed technology—or its "footprint in the marketplace"—as part of his *Georgia-Pacific* analysis; not only is such an analysis permissible, it is the antithesis of the entire market value rule.

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011) (citing *ResQNet*, 594 F.3d at 869).[4]

### 4. Mr. Mills' *Georgia-Pacific* analysis is tied to the hypothetical negotiation between SimpleAir and Google.

In its original motion, Google further contends that that Mr. Mills' analysis "fails to tie the *Georgia-Pacific* factors to a hypothetical negotiation that would have taken place between the parties." Dkt. No. 748 at 18. Google's argument is conclusory[5] and it is not compelling.[6] During the trial Mr. Mills specifically and methodically took the jury through his application of the *Georgia-Pacific* factors and their application to his calculations. *See* Dkt. No. 711 at 141:24-165:8.

### D. Google's proposed non-infringing alternative does not cap damages.

At trial, Google presented evidence that it could avoid infringing the '914 patent by redirecting traffic over the infringing messaging services to at least one server located outside of the United States. *See* Dkt. 711 at 72:2-76:5; Dkt No. 713 at 58:4-59:12. Google's expert further testified that the cost of implementing this non-infringing alternative would have been approximately $4.8 million. Dkt. No. 717 at 27:12-20. Based on this testimony, Google argues that Mr. Mills' damages calculations are "divorced of all relation to a potential non-infringing

---

[4] In a footnote in its reply, Google also argues that SimpleAir failed to introduce sufficient evidence that Google generates any revenue from products for which it does not charge (*e.g.*, the Android operating system), and that SimpleAir failed to establish any nexus between the infringing services and the revenue Google receives. Dkt. No. 758 at n.7. The first argument is clearly wrong, as uncontroverted evidence presented by Mr. Mills and Google's own witnesses establishes that Google generates significant revenue from many products and services, despite not charging directly for such services. *See* Dkt. No. 711 at 146:3-149:10; Dkt. No. 714 at 566:21-70:1; Plaintiff's Exhibit 49. SimpleAir likewise introduced substantial evidence showing that the nexus between the infringing services and such revenue. *See, e.g.*, Dkt. No. 711 at 149:20-150:12.

[5] The only binding authority cited by Google is the portion of the Federal Circuit's opinion in *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011), rejecting the 25% "rule-of-thumb." Contrary to the argument from Google's lawyers, there is no indication that any such "rule-of-thumb" was applied as any part of Mr. Mills' analysis.

[6] It is also a procedurally improper attempt to argue a *Daubert* challenge under Rule 50. *See Versata*, 717 F.3d at 1264.

alternative," and therefore fail to provide a legally sufficient evidentiary basis for the jury's award. Dkt. No. 748 at 17 (citing *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1312 (Fed. Cir. 2002).

In other words, Google asserts that Mr. Mills' analysis is not properly tied to the facts of this case.  Such an argument "should be resolved under the framework of the Federal Rules of Evidence and through a challenge under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579." *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1284 (Fed. Cir. 2013).   Google failed to raise this issue in its *Daubert* motions, and has therefore waived it.   *Id.*

However, even if Google had not waived, its argument falls short on the merits.  To the extent Google's argument that Mr. Mills' calculation and/or the jury's damages award is "outrageously high" is an attempt to cap damages at the cost of implementing its non-infringing alternative; that argument fails as a matter of law.  *Mars, Inc. v. Coin Accepters, Inc.*, 527 F.3d 1359, 1373 (Fed. Cir. 2008) ("[Defendant] is wrong as a matter of law to claim that reasonable royalty damages are capped at the cost of implementing the cheapest available, acceptable, noninfringing alternative . . . To the contrary, an infringer may be liable for damages, including reasonable royalty damages, that exceed the amount that the infringer could have paid to avoid infringement.").

SimpleAir presented substantial evidence that re-routing traffic to foreign servers would not have been the best—or even an acceptable—alternative to infringement.   Specifically, SimpleAir presented substantial evidence that Google's best non-infringing alternative would not have been to move its servers or re-route traffic, but to provide notifications through a persistent connection between the notification app and its corresponding application server.  Dkt. 711 at 57:15-64:3

18

(Dr. Knox).   Dr. Srinivasan and Mr. Mills then expressly considered this alternative in their analyses. *Id.* at 94:7-20, 104:15-105:8 (Dr. Srinivasan); 151:14-159:2 (Mr. Mills).

SimpleAir also presented substantial evidence that Google's proposed alternative would merely substitute its exposure under the '914 Patent for exposure under another SimpleAir patent, the '279 Patent.   *See* Dkt. No. 711 at 65:9-66:23.   Google argues that it is improper for SimpleAir to rely on the '279 patent because it issued well after the date of the hypothetical negation, and that SimpleAir failed to introduce evidence that Google infringes the '279 Patent (or would infringe under its proposed alternative).   The first argument fails as a matter of law.   *See Lucent*, 580 F.3d at 1333 (quoting *Sinclair Refining Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689, 698 (1933)).   The second argument is inapposite.   SimpleAir introduced expert testimony demonstrating that the proposed alternative would expose Google to a significant risk of liability under the '279 Patent.   *See* Dkt. No. 711 at 65:9-66:23.   Drawing all reasonable inferences in favor of the non-moving party, that is all that is required to show that Google's proposed alternative was unacceptable, and therefor to support the jury's verdict.   *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1346 (Fed. Cir. 2011) ("We agree with the district court that a reasonable jury could have found that the alleged alternatives were either not acceptable or not available, and that such a finding was supported by substantial evidence.").   This Court need not, and does not, decide whether such evidence would be sufficient to prove infringement of the '279 Patent.

Determining the weight to be given to proposed noninfringing alternatives is "a task for the jury, and a reasonable jury could have chosen to give very little weight to this evidence." *Spectralytics*, 649 F.3d at 1346.   After considering this evidence, the jury was entitled to choose a damages award within the amounts advocated by the opposing parties.   *Powell*, 663 F.3d at 1241.

The jury did just that, awarding SimpleAir $85 million in damages—a figure that is between the $4.8-$6 million advocated by Google, and the $127-$146 million advocated by SimpleAir. Having reviewed the entire record, the Court is persuaded that substantial evidence supports that award.

**V.      Google's renewed *Daubert* challenges are not properly before the Court.**

As the Court noted above, many of the arguments raised in Google's motion for JMOL merely re-urge Google's *Daubert* challenges.   As the Federal Circuit recently explained, this is improper:

> Under the guise of sufficiency of the evidence, [Defendant] questions the admissibility of [Plaintiff's] expert testimony and whether his damages model is properly tied to the facts of the case. Such questions should be resolved under the framework of the Federal Rules of Evidence and through a challenge under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).
>
> . . .
>
> Whether evidence is inadmissible is a question clearly within the scope of the rules of evidence and *Daubert*. However, [Defendant] has not appealed a *Daubert* ruling. Instead, it argues that the jury could have not had sufficient evidence to award lost profits because the expert's testimony was fatally flawed and should not have been admitted. This is the improper context for deciding questions that, by [Defendant]'s own admissions, boil down to the admissibility of evidence.

*Versata*, 717 F.3d at1264 (internal citations omitted).

Like the defendant in *Versata*, Google argues that SimpleAir's expert testimony was fatally flawed and should not have been admitted, *see, e.g.,* Dkt. No. 748 at 18-34.   However, Google also expressly admits that these questions "boil down to the admissibility of evidence."   *Id.*; Dkt. No. 748 at 18 ("Google renews its objection that the testimony of Plaintiff's damages expert, Dr. Seenu Srinivasan, should have been excluded or stricken under Federal Rule of Evidence 702 and *Daubert*."); Dkt. No. 748 at 22 ("Google renews its objection that the testimony of Plaintiff's

damages expert, Mr. Robert Mills, should have been excluded or stricken under Federal Rule of Evidence 702 and *Daubert*.").   These arguments are improper in a Rule 50 motion for JMOL, and the Court declines to consider them.[7]

## VI.    Conclusion.

For all the reasons stated herein, Google's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 748) is **DENIED** in its entirety.

**So ORDERED and SIGNED this 10th day of December, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[7]Contrary to Google's argument, nothing in *Brooke Group v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) requires the Court to re-hear *Daubert* challenges at the JMOL stage.   Under Rule 50, Google may challenge the sufficiency of the evidence, including expert testimony, supporting the jury's verdict; it has done so in several portions of its motion.   However, Rule 50 does not allow Google to re-argue the admission of that evidence, as it is expressly seeking to do in Sections II and III of its motion.